Good morning, your honors. Puentes, Vestrepo, and Vanaski. How do you say that? Vanaski? Vanaski. I did better with the Spanish words. I'm here on behalf of the appellants of Barbara Walter's daughter, Leanna Reebok, who is the successor to her, and Judy Cromenhawk. There are many issues that we had to brief. We had very little time and very few pages, but I would like to cover some highlights, your honors, this morning. What the court needs to look at with regard to this case is this is not a dispute among neighbors. It's not a simple quarrel among neighbors. This is a case involving two women who had clearly diagnosed anxiety disorders that needed emotional support animals. Their anxiety disorders, at least with regard to Ms. Walters, were so severe that she killed herself. She committed suicide. Wait a minute. Now, I understand there's a coincidence of factors here, but has there been a finding that that was the reason for the suicide? There is no finding of that, your honor, but it's my personal belief. Let's focus on the accommodation claim. Are the factual issues, should summary judgment have been granted? Absolutely not. There were material facts in dispute. In fact, your honors, when I was going back through the briefs and when we're arguing facts in dispute that are clear from the appellate briefs. Which facts were in dispute? There's whether or not, first of all, we have to look at whether or not there was a request for an accommodation. There clearly was. The question is when. The defendants want you to believe, or the appellees want you to believe, that miraculously sometime when my clients asked for this accommodation in March or February, that it was immediately granted. There was a request in writing. Absolutely. There was a request in writing. If you look at the affidavit of Lou. There was a doctor's statement that accompanied the request. Yes, your honor. What you have to look at is that time period from the first time that Ms. Walter's request was made. Now, I think it's relevant to the Cromenhawk, even though we're not dealing with the merits of the Cromenhawk case, to look at when Walter's request was first made in February 2011. What the board did was they held a meeting at which her private medical condition was discussed. And what is happening here is there was no procedure in place by the board. So what did these women have to do? They had to come up with their own procedure to protect their own private medical records. And what happened was their private medical conditions, their anxiety disorders, the very things that they feared to be disclosed, were revealed to the public on the internet and they are still there today for anyone to see. As simply as you can, when was the accommodation requested? Is it your position that the letters to the board and they're also coupled by a request not to disseminate this accommodation? They went to the property manager. Both these ladies had been on the board. I don't know if that came through from the record. They knew how to do it. They went to the property manager. They put these things on file. Ms. Walter's original request was done in February of 2011. Ms. Cromenhawk's was done in July of 2011. That is our position. After that point, you have to look at what this board did and these other individuals did. What did they do? They held meetings and they discussed their private medical condition. During this period, Ms. Walter's and Ms. Cromenhawk had their comfort dogs. Did they not? That is true. And the district court used the words, they never lost their pets. But that's not what these are. These are emotional support animals. What happened after these requests were made, well actually before the papers, they were on file in the office. They had many meetings. What they decided to do was fine them $50 a day and act a bylaw that was illegal saying only with regard to the ADA could there be an accommodation. Is this relevant to your accommodation claim or the interference claim? It relates to both. It's when were the requests made and what were the actions that were taken. So we have these papers on file and they actively went about denying them. They fined them. They had board meetings at which they encouraged the community to actively go to the office and look at those requests. The use or the accommodation was not granted until I wrote a letter, till after HUD complaints were filed, after the CalPET board got counsel through their insurance carrier that's familiar with this area of the law and fines had been imposed $50 a day. Do you have a denial of the accommodation? You also had a determination from HUD that an appropriate request for an accommodation had not been made. Do we ascribe any significance to that? I don't ascribe any significance to that based on the timing because by the time they'd already had a HUD request and then all of a sudden the board decided to do the right thing, it was like overnight. But before that you have to look at that time period, that very brief time period of what happened when the original request went on file. And as you know from your own case, Lapid Laurel, no interactive process is required. It's technically, it was a constructive denial and a constructive denial is a denial. Can you address the two individuals who were deceased? I wanted to get your take on that, your failure to amend the complaint to address your claims against your state. I don't think we, we filed motions to add these people. I checked the record yesterday, your honor. We filed, we attempted to serve them. In fact, Rosemary Felice avoided service of process. We did everything, every time the district court ordered us to do something, unfortunately because of the way the federal rule is written, this was used as a litigation tactic to try to defeat our claim. What they did was they wouldn't reveal who to serve. They wouldn't reveal who was the proper party to be served. The court ordered them to do that with regard to both Harcourt and Felice. And then because they didn't reveal it by the time the court dismissed the entire case with regard to all defendants on May 27th, 2014, we still didn't know who they were, so they could never have been served. As it stands, could you, in short statement, tell me what your current claims are and for what? My current claims with regard to the appeal? Yeah, well, in the, let's say in your under the Fair Housing Act. Claiming emotional distress, I imagine? Yes. Failure to accommodate interference with their fair housing rights. And we had many, yes, there's an interference claim. We briefed that. I don't want to go into that. I see my time's up. Thank you very much. I saved two minutes for rebuttal, your honor. Thank you. Judge Fuentes, may I ask a question? Sure. Hold on, Ms. Nance. I know the time is up, but I did want to ask a question about our jurisdiction. When you filed your notice of appeal, you filed your notice of appeal, but we didn't have an appealable order at that time. Is that correct? Well, it's our position, your honors, that as of May 27th, 2014, the entire case had been dismissed. The court had already ordered no trial would go to the defendants. I know when I checked the record again yesterday, we waited to the very last minute to file 30 days from the date that the first opinion was issued. These cases were always heard jointly by the district court. So I was in a perilous position. Hold on, I think we're getting a question from Judge Nance. Yeah, but even that opinion left open the matters with respect to I understand that the judge had said that she was going to rule against you on all claims, but the opinion that had issued and the order that had issued did not deal with Felice and Harcourt at all. The first opinion, yes, your honor, but if you check the January 2nd, 2015 opinion, he goes back and he added a sentence and it says the claims regarding Felice and Harcourt had been dismissed. So the district court record is very confusing. We put that in a footnote in our brief. It was, if you have 30 days to appeal and you're the person who wants to appeal, you have to decide whether or not to file it. Hindsight being 2020, every time one of these orders came out, maybe I should have refiled another notice of appeal, but here we are. It's our position. Legally, that is not fatal to our claim here today on the merits that everybody was on notice of what was going on. Everybody in this courtroom, some of them are here today, knew we weren't having a trial. Everybody knew their claims were going to be dismissed. The question was, when was the district court going to write an opinion? We didn't know that he was going to write three or four different opinions correcting different things. In response, thank you very much. Thank you. Ms. Sanderson. April Anderson for the United States, Your Honor. We're here to address the survival issue. The district court in this case went astray when it applied Section 1988 and case law interpreting Section 1988 beyond the plain terms of that statute. The statute applies by its terms to certain titles of the revised statutes, titles 13, 24, and 70. It doesn't apply to the Fair Housing Act. Furthermore, there's nothing in the statute's history to say it should be expanded beyond the plain language. The statute has been amended several times. Congress added subsections B and C, and it followed the general structure that it had in 1988A in enumerating the laws that those subsections would apply to. As Congress has amended the statute, it's never gone back and occurred, the Supreme Court in Moore had stated that Section 1988 applies to the Reconstruction Era Civil Rights Acts. And even though the Seventh Circuit in Fleming had said Section 1988A doesn't apply to Title VII. So there's really no reason to read Section 1988 beyond its plain language. This court's precedent also doesn't suggest that. In Miller, this court dealt with Fair Housing Act and Section 1982. Because there was a Section 1982 claims that actually dictated a good portion of the damages in that case under punitive damages that would not have been allowed under the Fair Housing Act at the time. The upshot of it is that then we have to turn to another general principle on the choice of law. Without Section 1988, the court can turn to decide the issue of law. This court has discussed that case, it has three requirements. Yes, survivability of the claim after the plaintiff has passed. So survivability is one of those gaps that's left open in the federal statute. The federal statute doesn't address it, then the look at the principles enunciated in... Yes, and the policy implications are important under the Kimball Foods Test. It says we need to look at the underlying federal policies. Among the things we need to look at is, is there a need for uniformity? And this court has been very generous with that. It said in General Battery that and in Eichenholz, basically, when you have a system of federal liability and an overall system of federal laws, uniformity is preferable. We're to assume that Congress generally wants the statutes to be applied uniformly. Uniformity is desirable. It hasn't said that this court has to find that uniformity is essential to the operation of the federal statute, but that's generally how it goes. Also, this court in Inouye General Battery pointed to the incorporation of federal common law into civil rights statutes as an example of where uniformity is needed and a good way to incorporate uniformity. The Supreme Court has turned to common law principles when it has applied the ADA in Clackamas and in applying Title VII in Burlington and in Ellerth, and it said, this court in General Battery said, that application is the sort of thing we're looking for when we're wanting to promote uniformity under the 1988 does not apply to all modern civil rights statutes. That's the case. The statute actually lists what it applies to. It says it applies to Titles 13, 24, and 70 of the revised statutes. That doesn't include the modern Civil Rights Acts. It includes certain historic Civil Rights Act, like 1982, that this court was talking about in Miller. If you look at the Kimball Foods Test, its second prong also favors application of federal law in the second prong, as this court has described it, we need to look and see if there's a frustration of a federal objective. Again, we don't have to show that the statute is unenforceable without... What federal objective would be frustrating if we didn't follow you? Well, there are a number of them. First of all, in this particular statute, in Section 3601, Congress actually said that it was to provide for Fair Housing Act throughout the United States, suggesting that uniformity of one of the objectives that Congress actually talked about. Another objective that Congress had was the recompense paid to victims of discrimination. And when it comes to Fair Housing Act claims, victims often bear costs such as moving expenses, costs of finding new housing. If a victim passes, those costs are passed down to her family and her estate instead of on the defendants. It's contrary to the purposes of the rebreeding purposes of the Fair Housing Act. The Fair Housing Act also has specific intent that it dissuade wrongdoers. In the modern civil rights acts, private plaintiffs are often talked about as a private attorney general. They bring to light these violations, they clarify the law for others. And that happens regardless of whether damages are sought on behalf of a victim or on behalf of her estate. Particularly in the disability context, the legislative history of the Fair Housing Act says discrimination based on disability often comes from ignorance. And every time someone brings one of these cases and defendants' responsibilities are made clear, it helps to dispel some of that ignorance and make the law clearer to apply. I think you can see that applies here. And then that interest would be thwarted if the case doesn't go forward merely because the plaintiff is pursuing on behalf of an estate rather than an individual. Let me check. Does anyone ask you, do you have any questions? I have no questions. Thank you. Thank you, your honors. Okay, we have three counselors who will be arguing. Mr. Park, eight minutes. May I proceed, your honor? Yes. Thank you. Good morning. James Parker, Boyd Richards Parker, and Colonelli. I'm here on behalf of the Calpett Bay Condominium, the board of the association, Mr. Robert Cooking, Mr. Vincent Veradamo, and to the extent that there are any claims, which I don't believe that there are, against Max Harcourt. If I could start just very briefly, I know that there are at least five different areas that have been brought up on the appeal that are before the court and the briefs. If I could return real quick to Judge Venasky's question dealing with the jurisdictional issue. I think the jurisdictional issue is seminal to this case. I don't think the court has any jurisdiction in this case. It's set forth in the briefs. Yes, your honor, most respectfully. The only rule three is very specific. It says you must set out exactly what it is that you intend to appeal. The only thing that's set out in the notice of appeal from either one of these ladies, Ms. Cromenhoek or Ms. Walters, is the November 18th, 2014 order. I thought the problem was the timeliness of the notice of appeal as opposed to the content. Now you're addressing the content. Well, I'm addressing the content because it deals with the timeliness. The content of... Is that the judge's, the district court's decision? That was the original decision. Well, his original, the court had a hearing on the motions for summary judgments on the morning of May 27th, 2014. At the conclusion, the judge entered, Judge Gomez entered an order, a verbal order, saying that he was going to grant the motions for summary judgments as to particular counts and then other counts as he was going to dismiss for lack of jurisdiction because he didn't accept the plenary jurisdiction under the state laws that were also intermingled with the 15, or excuse me, 18 counts that were brought by both of the plaintiffs in these cases. Did you get to the, I guess, the more important thing, right? Yeah. I'm sorry. If I wondered, I didn't mean to, Your Honor. I was trying to set it up. Did you dispute that you knew what was being appealed in this case? As of November 18th? Is there any confusion on the part of the defendants about what plaintiffs were appealing? I believe there was, Your Honor, most respectfully, because there was no final judgment at that time. There was only a memorandum opinion on November the 18th. That memorandum opinion was ultimately vacated by Judge Gomez on December 23rd, 2014. There was a subsequent memorandum opinion entered on December the 24th relative to all the clients except for Harcourt and for Felice. And that is only as to the Cromenhoek because you have to remember we're talking about two different cases. I know we're sort of combining them and treating them as one as we discuss them, but in reality, there are two separate cases and there are two separate sets of facts and issues that we're dealing with. With regards to the Cromenhoek case, that issue, the appeal and the judgment, the appeal, as far as we're concerned, the appellate time began to run as of December 24th, 2014. As to Walters, it would be January 2nd, 2015 when the judge entered a renewed order and memorandum opinion and judgment on that date. It's significant that on that date that there was no order dealing with our final judgment entered as to Mr. Harcourt or as to Mr. Felice. Therefore, I don't believe that the court has any jurisdiction to even consider an appeal as to Mr. Harcourt, but again, I can address that at a later time. What I was driving at with regards to the question from Judge Panaski was simply that there was never a renewed notice of appeal. There was never an amendment to the notice of appeal. There was nothing. The plaintiffs have continued to ride on their December 17th notice of appeal. I think the jurisdiction is clear that they have failed to comply with both Rule 3 and Rule 4. If you have no other questions, I'd like to move on because I know I don't have a lot of time. With regards to the arguments, with regards to Ms. Cromenhoek and her alleged facts, as I'm sure you've read through the briefs as well as through the appendix. No, I don't think there's anybody that's interested in the constructive denial. There was no constructive denial. I'm addressing it as to Ms. Cromenhoek and the case against CalPET and my particular defendants, which are the main ones in this case. Of course, there's Talkington and Felice and the rest of them, but if you read the court's order, it's very clear there is no dispute of facts. There are allegations. As I listened to the argument by my colleague, Ms. Wentz, on behalf of the plaintiffs in this case. The allegation is that a very specific request for an accommodation was made accompanied with a medical certification, and that was never responded to. And that's just not true. That's an allegation. That's not a fact. What are you conceding was done? Because we are conceding that at some point, both Ms. Walters and Ms. Cromenhoek gave the association some information, but she gave it to this lady named Ms. Schechter. And Ms. Schechter was under the instructions from both of those ladies not to discuss it with the board, not to discuss it with anybody, that it was none of anybody's business. In fact, Ms. Walters said, you will not discuss it with anyone from the board because it's none of their business. Something as important as this request for an accommodation under the Fair Housing Act was done in writing in that it would be responded to with a written, yes, you can, or no, we are rejecting your application. That's true. Did that take place? No, nothing. It never did. Finally, and it's not until March of 2012. In March of 2012, there was a request. As soon as that request came in, the board considered it, and in April 2012, it was granted as to both of these ladies. If you will recall also from the briefs and from the appendices that HUD was invited to look at this issue long before this court, and HUD looked at it and said that they found no probable cause either because they never found that there was any sort of information, significant information that was given to the board that would allow them to evaluate what the problems were with either one of the plaintiffs that would give them a leg up, or as we talk about it here, an opportunity to say that they had given the board enough information that they should reasonably have implied that there was some sort of a request, even though there was never a written request. It took a considerable amount of time to respond to the request. Yes. Within like seven or nine months. Yes. With regards to the issue of the 1988 statute, if I just real quick, I don't see how anything could, we talked about the Reconstruction era and that sort of argument. I don't think there could be anything more fundamental to our civilization and certainly to our Constitution as the right to be free in your home in order to exercise your rights. That's a civil right. That's what 1988 stands for. If we go back, that's what the 1988 statute was originally intended to do, to take care of the wrongs and the aggressions that were going on after the Civil War. That civil right, dealing with the issue here that 1988 would not apply under the FHA is completely fallacious. The 1988 is applied uniformly throughout the United States because it refers specifically back to cases like this, which are personal injury actions and tort actions. It refers back to the states. The state law is very clear. The judge ruled correctly. Thank you, Your Honor. Thank you. Mr. Sprain. Okay, I don't know if I pronounced your name correctly. You're going to address the Mr. Talkington's issue. That's correct, and it is correctly pronounced Sprain. Interference issue? Interference issue. If I might briefly address the issue on the appeal, notice and appeal, I just wanted to supplement the comments of the previous counsel, that not only were the notices of appeal filed on this case on December 17th, and then on December 23rd, an order issued by the District Court vacating its prior November order, but on December 24th, the Third Circuit sent an putting counsel for the plaintiffs on notice that there were issues with the jurisdiction in this matter. After the subsequent orders were issued, despite prior notice as to concerns as to jurisdiction, plaintiff's counsel took no steps to address those questions. So it is clear that the plaintiff's counsel were both on notice and had an opportunity to cure, did not do so. Okay. As to the interference question, it is hard to be more specific than the District Court was in reviewing the interference issue. The interference issue is essentially a claim that Mr. Talkington voiced opinions as to how and in what way the board should address the Fair Housing Act filing on the behalf of Ms. Talkington. Those are common. Those are every day in life. We're having one here today. It is not a violation of the Fair Housing Act for me to argue on his behalf, nor is it a violation of Mr. Talkington's part to argue for a different interpretation. More than just argument going on here, right? Not on behalf of Mr. Talkington. He did not physically harass her. He did not interfere with her. He did not in any way undertake steps that were malicious. He simply opposed opinions that differed into interpretation. He blogged. He blogged. You don't think blogging could be considered interference? I think Mr. Talkington has a First Amendment right to speak his opinions. And no, I think the court's quite clear. And the court cited cases such as Sheikh versus Raven, where people did far, far more egregious comments than he did in talking about to be disagreements and unneighborly behavior, perhaps, but they don't rise to the level of interference. If those don't rise to the level of interference, then Mr. Talkington's. I'm sorry? We don't see how that's possible, Your Honor. In this instance, Mr. Talkington is not alleged to have taken any step that a citizen of the United States is not entitled to. He was entitled to express his opinion as to how the bylaws should be amended if they should be amended. He was entitled to express his opinion as to the behavior of his neighbors. He's not required to simply acquiesce because they invoke the words Fair Housing Act. He's they're entitled to prevail, and they did so. They did not lose their right to live in their homes. They did not lose the right to have their emotional support animals. They simply had a disagreement, and Mr. Talkington is entitled to disagree. Mr. Talkington was the host of the blog. Is that correct? That's correct, and there is no dispute that the comments of others on that blog are protected by the Federal Communications Decency Act, I believe is the title. I may have that wrong, but it's in our documents. I'd also point out that there's an extensive discussion in the Federal Communications Decency Act, and I think that analysis is key and very much on point, Your Honor. Judge Vanaskie, any questions? No questions. Thank you. Thank you, Your Honors. Thank you very much. Mr. Waldner? Good morning, Your Honors. My name is Kyle Waldner, and I represented Al Felice, deceased for a time at the trial level of his case. He died during those proceedings, however, and I have no client at this stage. Nonetheless, the appellants purport to bring this appeal against Mr. Felice, but they have never substituted anyone in his stead. Since you cannot prosecute an appeal against a dead person, Al Felice cannot be a proper party to this appeal, and the appeal must be dismissed as to him. Now, Al Felice died less than two months after the complaint was filed in this case. He didn't represent Harcourt, did he? No, Your Honor. Just Felice. Was that made public? I mean, would the plaintiffs have known that he was deceased, and therefore, the claim against him was not the same? Absolutely, Your Honor. The complaint was filed April 9, 2012. Al Felice died May 25, 2012, less than two months later. I believe the next week, a notice of death was filed on the record. During the next two and a half years, the appellants failed to substitute anyone for Mr. Felice. Did you yourself notify the plaintiffs of your client's status? Yes, Your Honor. There was that notification. There was a lot of briefing on this issue in that two and a half year period of time in which the appellants failed to substitute anyone. Is it the case that to this day, there has been no effort to substitute? Yes, Your Honor. Not that there hasn't been an effort, but there's been no proper substitution. What the appellants have done now within the context of this appeal is to file a motion for substitution relying on Rule 43. That's Appellate Rule 43. It's patently improper to proceed under that rule. The rule is very clear that the circumstances are very narrow for that rule to apply. It basically applies after the notice of appeal is filed. There's a small exception for an appellee who dies after the entry of judgment, but before the notice of appeal is filed. That's it. Neither of those circumstances applies here. Mr. Felice died two and a half years prior to any sort of judgment in this case, and that is not a proper avenue for substituting any party here. Again, there is no way that Mr. Felice can be a proper party to this case for those reasons, and the appeal must be dismissed as to him. I would just note really he's not a party because of the notice issue. The notices of appeal did not effectively designate the judgments. In one way that in Mr. Felice's case, one distinction between him and the other defendants here, the other appellees, is that the appellants here filed no notice of appeal in this case designated any order whatsoever with respect to any issues as to Felice. There was an order that was designated, and that dealt with the other defendants and the other appellees in this case, not Felice. There's nothing that has put Felice on notice as to any appeal or any claims that would be right for appeal in this case. So that's another basis for Mr. Felice why this appeal should be dismissed. No questions. Thank you very much. Thank you. Ms. Pence. Just briefly, Your Honor, I want to address points made by opposing counsel. First of all, it's an assertion of COWPAT that no request was made starting in March of 2011 by Barbara Walters. If there was no request made by Barbara Walters, why then did the Board hold a meeting to discuss Walter's request immediately thereafter, talk about her private medical condition for all residents to hear, blog about her request to all residents following that meeting, request that they asked her to make a second request to clarify her original request, institute fines, and enact a new bylaw clarifying the request? Also, they put up signs, no dogs allowed, even though the security company said, that's ridiculous, you're just begging robbers to come onto the property. They actively took steps with regard to both Walters and Cromenhawk's original requests that were made more than a year before they actually acted upon them. And after a lawyer got involved for them, the two ladies, for the Board, from HUD, after that. Mr. Parker did say that the request for the accommodation was in fact answered. I gather that your constructive denial is based on the delay of getting a response rather than not getting a response at all. Yes, Your Honor, I believe what Mr. Parker was addressing was that it was responded to when they claim that my clients made, used the proper magic words in order to request it. They kept saying, well, you've got, you know, when you make the request, but in the meantime, they'd already made their request. But those were factual issues for a jury. Could you address Mr. Sprain's comments about, you know, he has a right to speak his opinion on the internet and that really should not be considered interference. Absolutely. Talkington did much more than blog. He actually led the mob against the crowd. He got up on the soapbox and expressed his opinion. He was the one that... Nothing wrong with that, is there? Absolutely. Well, he actually facilitated this mob atmosphere and posted private things on this blog. I don't believe that, I think the Computer Decency Act protects everybody but him because of his actions for, in actually engaging the mob and to creating this atmosphere. This is online bullying is what it is. And this is a new thing in a new age, unfortunately. With regard to Mr. Felice, I have to disagree with counsel for Mr. Felice. First of all, everybody's here. Everybody has lawyers. Everybody's got briefs. They even stated in their brief that they have an insurance carrier that's paying their bill. I found that interesting. And they're all here. They all knew what was appealed. They all filed briefs and we all know what the issues are on appeal. So the technical violation of if that notice of appeal was properly filed and when, I think the Supreme Court rule is clear that it should not foreclose us from having our case heard on the merits, Your Honor. Since we do have your arguments in your briefs, we'll certainly be taking a look at that. Thank you all for well-argued case. We will take the matter under advisement. Thank you.